NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**HAYWARD INDUSTRIES, INC.,**
*Appellant*

**v.**

**PENTAIR WATER POOL AND SPA, INC.,**
*Appellee*

_____

2017-1124

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 95/002,008.

_____

Decided: February 26, 2018

_____

MARK NIKOLSKY, McCarter & English, LLP, Newark, NJ, argued for appellant. Also represented by STEVEN HALPERN, SCOTT S. CHRISTIE, TIMOTHY PATRICK HOMLISH, MATTHEW ADAM SKLAR; LEE CARL BROMBERG, KEITH E. TOMS, Boston, MA.

CHRISTOPHER JAMES FAHY, Quarles & Brady, LLP, Chicago, IL, argued for appellees. Also represented by JOEL AUSTIN, RAYE LYNN DAUGHERTY, MICHAEL PIERY, Milwaukee, WI.

_____

Before DYK, LINN, and HUGHES, *Circuit Judges.*

LINN, *Circuit Judge.*

Hayward Industries, Inc. ("Hayward") raises several issues in this appeal from a decision of the Patent Trial and Appeal Board ("PTAB") in an inter partes reexamination ("IPX") of U.S. Patent No. 7,686,587 ("'587 patent"), owned by Pentair Water Pool & Spa ("Pentair"). *Hayward Indus., Inc. v. Pentair Water Pool & Space, Inc.*, Appeal No. 2015-007909 (P.T.A.B. Apr. 1, 2016). The court addresses each of the issues raised, in turn. For the reasons stated, we affirm-in-part and reverse-in-part.

## 1. CONSTRUCTION OF "DRIVE"

Both parties agree with the Examiner's construction of "drive" as "a term of art for the electronics that produce [or provide] the proper electrical signal to power the electric motor." The parties disagree, however, on whether the term "drive" is properly limited to a variable speed drive.

The term drive is not defined in the specification of the '587 patent. Moreover, there is nothing in the specification to suggest that the motor protection invention broadly recited in the claims should be limited to the variable speed motor and drive of the disclosed embodiment. The Board recognized that the claims do not specifically recite a variable speed motor or drive but found reason to limit the claims to variable speed drives based on its finding that the "'587 patent, as a whole, contextually discloses a variable speed motor and associated drive." Board op. at 6. But in doing so, the Board makes the classic mistake of reading limitations from the specification into the claims. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc) ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.").

The '587 patent specification only describes variable speed drives in two instances, both of which support a broader reading of drive. First, the '587 patent notes that "[t]he controller *can* act as a . . . variable-speed drive." 4:61–63 (emphasis added). There is nothing in the specification to suggest that the controller *must* act as a variable speed drive. To the contrary, the specification teaches that controller 24 can act as a "power conditioner, a variable-speed drive, a pressure regulator, and/or a motor protector in the pump control system." *Id.*

Second, in the IPX proceeding, Pentair added claim 13, dependent from claim 1, which adds the limitation "wherein the drive is a variable speed drive and the motor is an alternating current motor." The first half of this limitation implies that "drive" is a genus and "variable speed drive" is a particular species, and that the terms are thus not intended to be coextensive. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) ("As this court has frequently stated, the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim."). We endeavor to give meaning to every limitation when construing claims. If "drive" in claim 1 is read to mean "variable speed drive," this first limitation in claim 13 would be rendered superfluous. Pentair is incorrect that the inclusion of a second limitation in claim 13 undermines the strength of claim differentiation in this case.

The Board also found persuasive the statement of Pentair's expert, Dr. Collins, that "the term 'motor drive' applies to a variable speed motor drive." Board op. at 7. But even accepting that statement as true does not mean that the term "drive" should take on that limited meaning in the context of the claims at issue, which are not limited to variable speed motors.

For the foregoing reasons, we agree with Hayward that the broadest reasonable construction of "drive" in the claims of the '587 patent should not be limited to a variable speed drive. Such a narrow construction is inconsistent with the broadest reasonable interpretation standard. We thus reverse the Board's contrary ruling.

## II. THE ADOPTED GROUNDS OF REJECTION OF CLAIMS 1-7 AND 9-14 BASED ON GENHEIMER

Substantial evidence does not support the Board's finding that starter 36 in the Genheimer reference, U.S. Patent No. 4,286,303, fails to meet the "drive" limitation of the '587 patent, as properly construed. The starter sits between the power source and the power lines leading to the electric motor, Genheimer at FIG. 1, and "operate[s] under the control of a coil" to function as a "drive," as recited in the claims. Genheimer at 2:44-45. Under normal circumstances, current from the power source activates the coil, which in turn controls switches within the starter to produce a current in the power lines leading to the motor, thus activating the motor. *Id.* at 4:2-5. When a fault such as overheating occurs, the control unit and control, connected in series with the coil, *id.* at 2:42-49, respond to the fault by deenergizing the coil and disconnecting the motor from the power supply at the starter, *id.* at 4:5-9.

The parties dispute whether the starter 36, coil 38 and associated circuitry in Genheimer "produce[s]" or "provide[s]" an electrical signal, and whether the signal is "proper." Substantial evidence does not support Pentair's argument that "produce[s] or "provide[s]" requires that the drive comprise a generator or battery or similar electrical production capacity, or that because the power originates from the three-phase power line, it is not being provided by the starter. The Examiner's construction of "drive" as "a term of art for the electronics that produce [or provide] the proper electrical signal to power the

electric motor" requires no more than the control of current to the motor.

Nothing in the claims or specification requires that the drive must modify, condition, or alter the electrical power between the power source and the motor in order to provide the "proper electrical signal." Indeed, Genheimer notes that "different motor types or ratings have different current operating levels," and that a component of the control unit (which determines the energization of the coil and thus the starter) "makes it possible for the control unit to be used with a variety of motors having different ratings." *Id.* at 4:19-22. All that the claims require is a signal that is proper for the selected motor type and rating.

Finally, we agree with Hayward that the starter 36 in Genheimer is not merely a switch, even though it includes switches. As noted, supra, the starter selectively provides current to the motor depending on the operating or fault condition extant. Nothing more is required.

For the above reasons, the Board's reversal of the Examiner's rejections 1-3, 7 and 10 cannot be maintained, and the Examiner's rejections of claims 1–7 and 9–14 based on Genheimer are sustained.

Because of our ruling on the rejections based on Genheimer, we need not and do not address the rejections of claims 1-7 and 9-14 based on Baldor and Carrow.

### III. WRITTEN DESCRIPTION OF CLAIMS 8 AND 15

The Examiner rejected claims 8 and 15 under 35 U.S.C. § 112 as lacking written description support for the claimed limitation, "wherein the direct current power supply is provided to the bus when the drive is shut down for the predetermined time." The Board reversed that rejection based on the operation of LED A as described in the '587 patent at 12:10-15, inferring from that description that the patent "discloses that the drives 46, which

are powered by the DC bus, can be powered while not driving the motor 16." Board op. at 12.

Hayward argues that substantial evidence does not support the Board's reversal of that rejection, emphasizing specifically that nothing in the specification indicates that the patentee was in possession of the concept of supplying direct current power to the bus when the drive is shut down for the claimed *"predetermined time."* We disagree.

The reference in dependent claims 8 to "*the* predetermined time" (emphasis added) refers back to the predetermined time for the shut down recited in parent claim 1 and is not a separate requirement for the power to be supplied for a different or limited period of time upon shutdown. Independent claim 15 similarly ties the recitation of "the predetermined time" to the predetermined time recited earlier in the claim. Because substantial evidence supports the Board's conclusion that the '587 patent discloses that power is provided to the bus during the predetermined time when the drive is shut down, we are not persuaded that the Board's determination should be overturned. We also decline to address Hayward's arguments based on the disclosures of Baldor and Carrow that were first presented to the Board on rehearing and for that reason not considered by the Board.

## IV. Cross-Appeal Rejections

Hayward argues that the Board failed to consider its cross-appeal arguments challenging the validity of various groups of claims on different grounds. Our decision sustaining the Examiner's rejection of claims 1-7 and 9-14 based on Genheimer moots all of the issues raised in Hayward's cross-appeal before the Board, except as they may relate to claim 8. Hayward argues that the Board failed to provide a thorough analysis of the various grounds it argued in challenging claim 8, *inter alia.* Hayward's cross-appeal arguments, however, were con-

clusory at best. The Board was not required to more thoroughly address issues that Hayward itself deemed worthy of only cursory argument. *See Conocophillips v. United States*, 501 F.3d 1374, 1382 (Fed. Cir. 2007) (citing 20A James W. Moore et al., *Moore's Federal Practice* § 328.20 [9] (3d ed. 2007)). Because substantial evidence supports the Board's conclusion that the cross-appeal arguments relating to claim 8 had no merit, we see no reason to disturb the Board's decision on that basis.

CONCLUSION

For the above reasons, we reverse the Board's determination that "drive" is limited to a variable speed drive, sustain the Examiner's rejection of claims 1-7 and 9-14 based on Genheimer, affirm the Board's determination that claims 8 and 15 are supported by the written description, and affirm the Board's treatment of Hayward's cross-appeal with respect to claim 8.

**AFFIRMED-IN-PART AND REVERSED-IN-PART**

COSTS

No costs.